

NEW VENTURE HOLDINGS, L.L.C.
D/B/A THE DUMP,

        **Plaintiff,**

v.                              Civil No. 2:18cv370

DEVITO VERDI, INC.,

        **Defendant.**

## OPINION AND ORDER

This matter is before the Court on a Motion to Dismiss filed by Defendant DeVito Verdi, Inc. ("Defendant" or "DeVito Verdi"), pursuant to Federal Rule of Civil Procedure 12(b)(2), or alternatively under Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6). ECF No. 4. For the reasons stated below, Defendant's Motion to Dismiss for lack of personal jurisdiction is **GRANTED**. As a result, the Court does not reach a decision on the alternative bases for dismissal. The Court **PROVIDES** Plaintiff New Venture Holdings, LLC, doing business as The Dump ("Plaintiff" or "New Venture"), with leave to amend the Complaint to cure all defects within fifteen (15) days after the entry of this Order.

## I. FACTUAL AND PROCEDURAL HISTORY[1]

Plaintiff New Venture is a Virginia corporation and operates a chain of discount furniture stores under the trade name "The Dump." Compl., ECF No. 1 ¶¶ 1, 5. New Venture has "The Dump" stores located in Atlanta, Georgia; Chicago, Illinois; Dallas, Texas; Houston, Texas; Philadelphia, Pennsylvania; Phoenix, Arizona; Turnersville, New Jersey; Norfolk, Virginia; Hampton, Virginia; and Richmond, Virginia. Verdi Decl., ECF No. 6 ¶ 24. New Venture's business requires effective advertising and marketing; New Venture relies on television, radio, print media, its online website, and social media for its advertising. Compl. ¶¶ 5, 7. Prior to March 2018, New Venture relied on in-house resources and regional advertising agencies to carry out its advertising and marketing. Id. ¶ 6. Because of its growing national platform and a desire to improve marketing efforts, in late 2017 and early 2018, New Venture began looking for a national advertising agency to take over its advertising and marketing. Id. ¶ 8.

---

[1] The Complaint attaches a copy of the contract the parties entered into. DeVito Verdi's motion to dismiss attaches a declaration by Ellis Verdi, president and co-founder of DeVito Verdi ("Verdi Decl."). New Venture's response attaches a declaration by Brian Hostetler, vice president of marketing for New Venture ("Hostetler Decl."), emails and evidence of phone calls between the parties, and court documents from other cases filed against Defendant. As further noted below, the Court is permitted to rely on both the allegations in the Complaint and these documents to evaluate the 12(b)(2) motion. Thus, the facts recited here are drawn from the Complaint, the motion papers, legal memoranda, and supporting documents.

Defendant DeVito Verdi is a New York-based advertising agency. Id. ¶ 9. In 2018, New Venture and DeVito Verdi began discussions for DeVito Verdi to become New Venture's principal advertising agency. Id. ¶ 12. For several years prior to these discussions, DeVito Verdi had solicited New Venture's business. For instance, in 2014, Paul McCormick, DeVito Verdi's executive vice president of account management, sent an email to Brian Hostetler, vice president of marketing for New Venture, who was located in Virginia, about an advertising campaign DeVito Verdi had done for Tribe Hummus. Hostetler Decl. ¶ 9, ECF No. 10, Ex. B. On January 8, 2016, McCormick sent another email to Hostetler about a television commercial by DeVito Verdi that won an award. Id. DeVito Verdi also mailed a letter dated June 29, 2016 to New Venture's Virginia Beach office, which attaches images of advertisements it created for other companies including another retail furniture store. Id. ¶ 12(a), Ex. C. DeVito Verdi followed up on this letter with several telephone calls. In total, New Venture submitted records of 7 phone calls from 2017 and 2018. Id., Ex. D. DeVito Verdi also promotes its advertising and marketing services on its website, describing its capabilities and creative and production processes. Compl. ¶¶ 11-13.

During an early 2018 telephone call between New Venture and DeVito Verdi, the parties reached an agreement in principle, but E.J. Strelitz, the chief executive officer of New Venture, would

not agree to hire DeVito Verdi until he personally met with DeVito Verdi. Verdi Decl. ¶ 13. Therefore, the parties held an in-person meeting at New Venture's store in Chicago, Illinois. Id. ¶ 14. At that meeting, the parties reached an agreement on DeVito Verdi's engagement as New Venture's advertising agency. Id.

Thereafter, DeVito Verdi drafted a letter agreement for the engagement and sent it to New Venture in Virginia. Id. ¶ 15. However, this was not the final contract. Following edits and further negotiation, New Venture put the agreement on its letterhead, and sent it back to DeVito Verdi in New York City, where DeVito Verdi executed the agreement on March 23, 2018 (the "Agreement"). Id. ¶ 16; Hostetler Decl. ¶ 15; Compl. ¶ 10.

The agreement provides that DeVito Verdi would provide work in four separate categories, with a flat monthly payment from New Venture for each category of work: (a) Strategy and Creative; (b) In-Store Communications Creative; (c) Public Relations and Social Media; and (d) Digital, Website Development, Optimization, SEO, SEM.[2] Agreement, ECF No. 1, Ex. 1.

The agreement further provides that New Venture must approve every advertisement and will own all finished product. Id. ¶ 1(a). It also states that New Venture must reimburse DeVito Verdi for

---

[2] SEM refers to search engine marketing — the paid advertisements that appear at the top of results in search engines like Google. SEO refers to search engine optimization, which uses the data on a website to place the website higher up in search engine results.

out-of-pocket expenses, but only expenses authorized by New Venture. Id. ¶ 2. Moreover, it provides that New Venture will be responsible for booking all business travel, i.e. all travel was subject to Plaintiff's approval.

Pursuant to the agreement, DeVito Verdi commenced work for The Dump on or after March 26, 2018. Following the execution of the agreement, representatives of New Venture went to DeVito Verdi's offices in New York to discuss DeVito Verdi's work on two occasions. Verdi Decl. ¶ 21. Employees of DeVito Verdi visited New Venture's store in Philadelphia, Pennsylvania, and traveled to North Carolina to view how and where New Venture purchases its inventory. Id. ¶ 22. At no point did any DeVito Verdi employee visit Virginia. Id. ¶ 28. The parties exchanged several emails and telephone calls during their contractual relationship. Hostetler Decl. ¶ 8. New Venture submits copies of these emails. Id., Ex. 1. DeVito Verdi also provided New Venture with ideas for 15 and 30-second television commercials, Verdi Decl. ¶ 31, and samples of in-store advertisements for The Dump store in Chicago, id. ¶ 30.

On June 19, 2018, New Venture filed a complaint against DeVito Verdi in the Circuit Court for the City of Virginia Beach. Compl., ECF No. 1. Count I of the Complaint alleges breach of contract or in the alternative, unjust enrichment, id. ¶¶ 26-43; Count II alleges fraudulent inducement, id. ¶¶ 44-60; Count III alleges a

breach of fiduciary duty, id. ¶¶ 61-65; and Count IV seeks a declaratory judgment that Defendant is in breach of its obligations and Plaintiff has no continuing obligations under the agreement, id. ¶¶ 66-68. On July 11, 2018, Defendant removed the action to this Court pursuant to 28 U.S.C. § 1441 *et seq.* Notice of Removal, ECF No. 1. On the same day, Defendant also filed a motion to dismiss in this Court. ECF No. 4. The motion and accompanying memorandum argue that the Court lacks personal jurisdiction over Defendant, and alternatively, that the Complaint fails to state claims upon which relief can be granted, as required by Rule 8; and as to Count II, argues that the Complaint fails to plead fraud with particularity as required by Rule 9(b). ECF No. 5. On August 3, 2018, Plaintiff filed a response. ECF No. 10. On August 9, 2018, Defendant filed a reply. ECF No. 11. The Court has reviewed the parties' submissions and concludes that a hearing is not necessary. Local Civil Rule 7(J); Fed. R. Civ. P. 78.

## II. STANDARD OF REVIEW

A party may move to dismiss an action for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "When a court's personal jurisdiction is properly challenged by a Rule 12(b)(2) motion, the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989); New Wellington Fin.

Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005) (a plaintiff "bears the burden of proving to the district court judge the existence of [personal] jurisdiction over the defendant by a preponderance of the evidence.").

A court may resolve a 12(b)(2) motion in one of two ways. A district court may hold an evidentiary hearing, or may rule on the motion papers, supporting legal memoranda, and the relevant allegations in the complaint. Combs, 886 F.2d at 676; PBM Prods. v. Mead Johnson Nutrition Co., No. 3:09cv269, 2009 WL 3175665, at *2, 2009 U.S. Dist. LEXIS 93312, at *4 (E.D. Va. Sept. 29, 2009) ("[A] district court may look to both plaintiff and defendant's proffered proof.").

A plaintiff must make a prima facie showing of a sufficient jurisdictional basis to survive a motion to dismiss. New Wellington Fin. Corp., 416 F.3d at 294. To evaluate whether a plaintiff has made a prima facie showing of jurisdiction, the court "'must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.'" Id. (quoting Combs, 886 F.2d at 676); MJL Enterprises, LLC v. Laurel Gardens, LLC, No. 2:15cv100, 2015 WL 6443088, at *2 (E.D. Va. Oct. 23, 2015). In cases where "the defendant provides evidence which denies facts essential for jurisdiction, 'the plaintiff must, under threat of dismissal, present sufficient

evidence to create a factual dispute on each jurisdictional element which has been denied by the defendant and on which the defendant has presented evidence.'" Colt Def., L.L.C. v. Heckler & Koch Def., Inc., No. 2:04cv258, 2004 U.S. Dist. LEXIS 28690, at *29-30 (E.D. Va. Oct. 22, 2004) (quoting Indus. Carbon Corp. v. Equity Auto & Equip. Leasing Corp., 737 F.Supp. 925, 926 (W.D.Va. 1990)).

"In any motion pursuant to Rule 12(b)(2), the ultimate question is whether the plaintiff has proven that the Court has personal jurisdiction over the defendant." People Exp. Airlines, Inc. v. 200 Kelsey Assocs., LLC, 922 F. Supp. 2d 536, 541 (E.D. Va. 2013). "'Personal jurisdiction' is the phrase used to express a court's power to bring a person into its adjudicative process." Noble Sec., Inc. v. MIZ Eng'g, Ltd., 611 F. Supp. 2d 513, 525 (E.D. Va. 2009) (citing Black's Law Dictionary 857 (7th ed. 1999)). "Federal district courts may exercise such personal jurisdiction 'only to the degree authorized by Congress under its constitutional power to ordain and establish the lower federal courts.'" Id. (quoting ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617, 622 (4th Cir. 1997)). There are two types of personal jurisdiction: general and specific. CFA Inst. v. Inst. of Chartered Fin. Analysts of India, 551 F.3d 285, 292 n. 15 (4th Cir. 2009). "General personal jurisdiction . . . requires 'continuous and systematic' contact with the forum state, such that a defendant may be sued in that state for any reason, regardless of where the

8

relevant conduct occurred." Id. Specific jurisdiction "requires only that the relevant conduct have such a connection with the forum state that it is fair for the defendant to defend itself in that state." Id. (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984)).

As further discussed below, because Plaintiff does not assert that general personal jurisdiction exists, the Court focuses on specific personal jurisdiction. "[F]or a district court to assert [specific] personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the [forum] state's long arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 397 (4th Cir. 2003).

Virginia's long-arm statute provides that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from" a number of enumerated activities, including "[t]ransacting any business in this Commonwealth" and "[c]ontracting to supply services or things in this Commonwealth[.]" Va. Code Ann. § 8.01-328.1(A)(1) & (2). The Fourth Circuit has noted that "a single act by a nonresident which amounts to 'transacting business' in Virginia and gives rise to a cause of action may be sufficient to confer jurisdiction upon

[Virginia] courts[.]" <u>English & Smith v. Metzger</u>, 901 F.2d 36, 38-40 (4th Cir. 1990) (quoting <u>Danville Plywood Corp. v. Plain & Fancy Kitchens, Inc.</u>, 218 Va. 533, 534-35 (1977)). However, "[w]hen jurisdiction over a person is based solely upon [Virginia's long-arm statute], only a cause of action arising from acts enumerated [therein] may be asserted against him." Va. Code § 8.01-328.1(C).

Virginia's long-arm statute has been determined "to extend personal jurisdiction to the extent permissible under the [United States Constitution's] due process clause, [so that] the statutory inquiry merges with the constitutional inquiry." <u>Consulting Eng'rs Corp. v. Geometric, Ltd.</u>, 561 F.3d 273, 277 (4th Cir. 2009). The due process requirement is satisfied if the defendant has "sufficient 'minimum contacts' with the forum state such that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" <u>Id.</u> (quoting <u>Int'l Shoe Co. v. Wash.</u>, 326 U.S. 310, 316 (1945)). The Fourth Circuit employs a three-prong test to determine whether the exercise of specific jurisdiction comports with the requirements of due process: "'(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims [arose] out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable.'" <u>Universal Leather, LLC v. Koro AR,</u>

S.A., 773 F.3d 553, 559 (4th Cir. 2014) (quoting _Tire Eng'g &_
_Distrib., LLC v. Shandong Linglong Rubber Co._, 682 F.3d 292, 302
(4th Cir. 2012)). As to the third element, the exercise of
personal jurisdiction is constitutionally reasonable if the
defendant's activities or contacts with the forum are such that he
would "reasonably anticipate being haled into court" in the forum
state. _World-Wide Volkswagen Corp. v. Woodson_, 444 U.S. 286, 297
(1980).

If the Court lacks personal jurisdiction over Defendant
DeVito Verdi, dismissal of all claims is appropriate. _Tire Eng'g_
_& Distrib., LLC v. Shandong Linglong Rubber Co., Ltd._, 682 F.3d
292, 302 (4th Cir. 2012) (citing _Geometric_, 561 F.3d at 273).
Therefore, the Court begins by considering DeVito Verdi's motion
to dismiss pursuant to Rule 12(b)(2). Because the Court finds it
lacks personal jurisdiction over DeVito Verdi, it does not reach
DeVito Verdi's alternative ground for dismissal.

### III. DISCUSSION

Although Plaintiff does not assert general personal
jurisdiction, the Court briefly addresses why it does not apply.
As discussed above, to establish general personal jurisdiction,
the plaintiff must show that the defendant "maintains 'continuous
and systematic' contacts with the forum state." _CFA Inst._, 551
F.3d at 292 n. 15. For a corporation, "the paradigm forum for the
exercise of general jurisdiction is . . . one in which the

corporation is fairly regarded as at home[,]" the place where a corporation is incorporated or has its principal place of business. Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011). A corporation may be "at home" in a state even if it is not incorporated there or does not have its principal place of business there. However, courts have found that a foreign corporation must transact business and own property or maintain permanent businesses in the state for such activities to constitute continuous and systematic contacts with such state. See, e.g., Reynolds Holdings, Inc. v. Data Supplies, Inc., 301 F. Supp. 2d 545, 550 (E.D. Va. 2004) ("[I]t is clear from the relative scarcity of cases permitting the assertion of general personal jurisdiction over a nonresident corporation that the standard for imposing general jurisdiction is high."); E.E. by & through Epsey v. Eagle's Nest Found., 200 F. Supp. 3d 626, 631-32 (D.S.C. 2016); see generally Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1199 (4th Cir. 1993) (general personal jurisdiction requires "continuous corporate operation within a state . . . so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities").

Therefore, as the parties agree that general personal jurisdiction is not at issue, the Court turns to address specific personal jurisdiction. The parties dispute the first and third factors of the Fourth Circuit's test for specific personal

jurisdiction: whether Defendant purposefully availed itself of the privilege of conducting activities in Virginia and whether it is constitutionally reasonable to exercise jurisdiction.

### A. Purposeful Availment

### 1. Jurisdiction Based on the Agreement

New Venture first argues that DeVito Verdi purposefully availed itself of Virginia law as a single act of entering into a contract with a Virginia company to supply goods or services is sufficient to establish jurisdiction. However, "a contract alone does not automatically establish minimum contacts in the plaintiff's home forum." <u>Boschetto v. Hansing</u>, 539 F.3d 1011, 1017 (9th Cir. 2008) (citing <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 478 (1985)). Rather, there must be "actions by the defendant himself that create a 'substantial connection' with the forum State." <u>Burger King</u>, 471 U.S. at 475 (quoting <u>McGee v. Int'l Life Ins. Co.</u>, 355 U.S. 220, 223 (1957)).

Therefore, the contract between New Venture and DeVito Verdi does not alone create a sufficient connection between Defendant and Virginia to justify the exercise of specific personal jurisdiction. Here, the parties reached an oral agreement in Illinois. Subsequently, DeVito Verdi sent a draft contract from New York to New Venture in Virginia. New Venture made changes and sent the contract back from Virginia to DeVito Verdi in New York.

This constituted a new offer, and the contract was executed in New York when DeVito Verdi signed it.

A contract which is accepted and becomes effective in another forum generally will not satisfy the minimum contacts necessary for the exercise of specific personal jurisdiction. Luke v. Dalow Industries, Inc., 566 F.Supp. 1470, 1472 (E.D. Va. 1983). This is because a federal court sitting in diversity must apply the law of the state in which the court is located, including the forum state's choice of law rules, Colgan Air, Inc. v. Raytheon Aircraft Co., 507 F.3d 270, 275 (4th Cir. 2007), and Virginia's choice-of-law rules provide that "[g]enerally, the nature, validity, and interpretation of . . . contracts [ ] are governed by the law of the place where made." Lexie v. State Farm Mut. Auto. Ins. Co., 251 Va. 390, 395 (1996). Applying Virginia's choice of law provisions, either Illinois or New York law (depending on whether the oral agreement or the final written contract governed) would govern questions about the nature, validity, and interpretation of the contract, rather than Virginia law. Thus, the Defendant availed itself of either Illinois or New York law, but Defendant did not avail itself of Virginia law.

Further, the fact that New Venture sent the contract from Virginia to DeVito Verdi in New York is a critical distinction between this case and those cited by Plaintiff. For instance, although Plaintiff argues that "[e]very fact supporting personal

jurisdiction in Cancun is present here," Plaintiff fails to note that the defendant in Cancun Adventures "subsequently negotiated and undertook a contractual obligation with a Virginia resident [and] mailed purchase orders to Cancun Adventure Tours in Virginia and accepted payment from Virginia." Cancun Adventure Tours, Inc. v. Underwater Designer Co., 862 F.2d 1044, 1046 (4th Cir. 1988). The defendant in Cancun Adventures sent a contract to the plaintiff in Virginia, where the contract was executed and Virginia law governed. See Eagle Aviation, Inc. v. Galin, 761 F. Supp. 405, 407 (D.S.C. 1989) (distinguishing Cancun Adventures). The Fourth Circuit "has given great weight to the question of who initiated the contact between the parties." Worldwide Ins. Network, Inc. v. Trustway Ins. Agencies, LLC, No. 1:04cv00906, 2006 WL 288422, at *3 (M.D.N.C. Feb. 6, 2006) (citing Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners, 229 F.3d 448, 451 (4th Cir. 2000) (finding no personal jurisdiction when the contractual relationship was initiated by the plaintiffs)); see also Burger King, 471 U.S. at 480-81 (finding that franchisee was subject to jurisdiction in Florida as he reached out to Burger King's headquarters there to set up a 20 year franchising agreement).

Finally, the Supreme Court has cast doubt on whether a contract alone can ever be a sufficient basis for jurisdiction. Because a contract is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences

which themselves are the real object of the business transaction,"
the Supreme Court requires that "prior negotiations and
contemplated future consequences, along with the terms of the
contract and the parties' actual course of dealing [ ] must be
evaluated in determining whether the defendant purposefully
established minimum contacts within the forum." Burger King, 471
U.S. at 479.

The cases cited by Plaintiff only underscore this point. None
of the cases hold that a contract alone is sufficient to establish
personal jurisdiction; in all of the cases there is additional
contact between the party and the forum state. See Waterside
Capital Corp. v. Hales, Bradford & Allen, LLP, No. 2:05cv727, 2007
WL 657286, at *6 (E.D. Va. Feb. 27, 2007) (after contract was
signed, Defendant accounting firm contacted its client in Virginia
and the client's former accounting firm in Virginia to produce
audits over three years); African Dev. Co. v. Keene Eng'g, Inc.,
963 F. Supp. 522, 526 (E.D. Va. 1997) (finding personal
jurisdiction where California seller of mine dredges delivered the
dredges to Virginia, payments were sent from Virginia bank, there
was business relationship between parties lasting over one year,
and considerable telephonic communication regarding order in
question of audits); Joe Rainero Tile Co., Incorporated v. Young
& McQueen Grading Co., Inc., No. 1:17cv00053, 2018 WL 1474085, at
*2 (W.D. Va. Mar. 26, 2018) (finding contractor subject to

jurisdiction in Virginia after it hired a subcontractor based in Virginia as evidenced by emails and calls); Prod. Grp. Int'l, Inc. v. Goldman, 337 F. Supp. 2d 788, 794 (E.D. Va. 2004) (Defendant employee was subject to jurisdiction in Virginia where his employer was based, having contacted his employer's main office and traveled to Virginia for business); Reynolds Metals Co. v. FMALI, Inc., 862 F. Supp. 1496, 1498 (E.D. Va. 1994) (defendant was subject to jurisdiction in Virginia as contract was signed in Virginia, plaintiff was based in Virginia and shipped tea packing from there as defendant knew, and contract expressly invoked Virginia law); E. Sci. Mktg., Inc. v. Tekna-Seal, Inc., 696 F. Supp. 173, 176 (E.D. Va. 1988) (Minnesota corporation which, over a period of years, sold $120,000 worth of equipment to Virginia company and solicited business from the company, and sent a representative to visit the company in Virginia, was subject to jurisdiction in Virginia).

Because the contract does not invoke Virginia law and was not executed in the state, it does not alone constitute a sufficient basis on which to exercise jurisdiction.

## 2. Jurisdiction Based on Pre-agreement Communications

The Court now turns to whether Defendant DeVito Verdi had sufficient additional contact with Virginia to justify the exercise of specific personal jurisdiction. New Venture argues that the various communications from DeVito Verdi in New York with

17

New Venture in Virginia prior to the contract, soliciting New Venture's business, is sufficient to establish jurisdiction. Courts have generally found that communications alone are insufficient to establish jurisdiction. E.g., Superfos Investments Ltd. v. FirstMiss Fertilizer, Inc., 774 F. Supp. 393, 397-98 (E.D. Va. 1991) (rejecting plaintiff's argument that negotiation of the contract by correspondence, telephone calls and facsimile transmissions to Virginia was sufficient to establish personal jurisdiction) (collecting cases). "[I]n the absence of a contract that is substantially connected to this state," visits to the state to negotiate a contract and telephone calls and faxes to the state during negotiations do not create specific personal jurisdiction. CEM Corp. v. Personal Chemistry AB, 192 F. Supp. 2d 438, 442 (W.D.N.C.2002), aff'd, 55 F. App'x. 621 (4th Cir. 2003); see also Consulting Engineers Corp. v. Geometric Ltd., 561 F.3d 273, 280 (4th Cir. 2009) (four emails, several telephone conversations, and the exchange of several contract drafts, and choice of law provision did not make out a prima facie showing of a sufficient basis for specific personal jurisdiction as "the mere fact that emails, telephone calls, and faxes were employed does not, of itself, alter the minimum contacts analysis.").

Because the various communications via phone and email — soliciting New Venture's business by Defendant and negotiating the terms of the contract (which, as discussed, did not invoke Virginia

law) — do not constitute sufficient minimum contacts, the Court finds that Plaintiff has also failed to establish specific personal jurisdiction based on Defendant's pre-agreement acts.

### 3. Jurisdiction Based on Performance of Contract

Next, the Court looks at whether DeVito Verdi's actions as to the performance of the contract is a sufficient basis for the exercise of specific personal jurisdiction. New Venture argues that the continuing relationship and ongoing obligations created by the agreement is sufficient to establish jurisdiction. Specifically, Plaintiff points out that Defendant was to obtain Plaintiff's approval in Virginia before producing or running any advertisement, all business travel had to be booked by Plaintiff, and all produced advertisements became the property of New Venture. Plaintiff's arguments are unavailing because they focus on New Venture's own obligations under the contract. It is true that New Venture had to approve the advertisements, book travel, pay DeVito Verdi its monthly fee, and accept ownership of work product — all from its headquarters in Virginia. However, that is insufficient to establish jurisdiction over DeVito Verdi. As courts have explained "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." Picot v. Weston, 780 F.3d 1206, 1213 (9th Cir. 2015); Burger King, 471 U.S. at 478 ("If

19

the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot"). Such an argument would mistakenly "allow[ ] a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." Walden v. Fiore, 571 U.S. 277, 289 (2014). Therefore, the fact that a contract envisions one party discharging its obligations in the forum state cannot, standing alone, justify the exercise of jurisdiction over another party to the contract. To hold otherwise would subject a party like DeVito Verdi to the whims of its counterparty; for instance, if New Venture had performed its obligations from its store in Texas or moved its headquarters, DeVito Verdi would suddenly be subject to personal jurisdiction in those forums through no action of its own. See, e.g., Danville Plywood Corp. v. Plain and Fancy Kitchens, Inc., 218 Va. 533, 535 (1977) (finding that a Pennsylvania-based buyer was not subject to specific personal jurisdiction in Virginia solely because the seller was in Virginia and shipped the goods from Virginia).

Plaintiff next argues that Defendant was required to provide Virginia-based New Venture with "on-going strategic guidance and council [sic] on media strategy and planning" and it was required to conduct "store visits and an audit of all existing in-store elements and the current store concept execution." Agreement, ECF

No. 1, ¶¶ 1(a), 1(b).  However, if activity in Virginia was not contemplated by the contract, it will not satisfy the minimum contacts requirement.  <u>Initiatives Inc. v. Korea Trading Corp.</u>, 991 F. Supp. 476, 479 (E.D. Va. 1997) ("The contract also provides no indication of where those services have been or will be performed."); <u>see also</u> <u>Diamond Healthcare of Ohio</u>, 229 F.3d at 452 (finding no specific personal jurisdiction when the contract called for performance primarily outside the state even though some acts required of the defendant necessitated its contact with the forum).

Here, it is not evident from the contract that the parties contemplated activity in Virginia.  DeVito Verdi did not have to provide media strategy in Virginia.  The facts before the Court suggest that New Venture went to DeVito Verdi's New York office on two occasions.  It is also not apparent that the clause regarding store visits contemplates activity in Virginia.  In fact, DeVito Verdi visited New Venture's store in Philadelphia, not Virginia. The review of the in-store elements could also have been done by visiting a store outside of Virginia.  And again, the facts suggest otherwise; DeVito Verdi's work for in-store elements was for New Venture's store in Chicago.  Verdi Decl. ¶ 30.  Finally, not only is the Complaint devoid of any allegation that the contract contemplated performance in Virginia, it actually suggests the parties contemplated work outside of Virginia.  For instance, the

Complaint states that New Venture hired DeVito Verdi because of "its growing national platform." Compl. ¶ 8. That is, it appears New Venture wanted to focus on growth outside of Virginia. Even the allegations of DeVito Verdi's breach of the contract suggest performance outside of Virginia. See Compl. ¶ 31(c) ("*As part of opening a new store in Chicago*, New Venture held a critical meeting to discuss the opening and related in-store issues. Despite the importance of that meeting, the designated 'in-store' representative at DeVito Verdi was not available to participate.") (emphasis added). This lack of contemplation of performance in Virginia distinguishes this case from those cited by Plaintiff. For instance, in Waterside Capital Corp., the defendant accounting firm had to perform the contract in Virginia by contacting its client and the client's former accounting firm in the state.

Plaintiff also attaches a number of emails sent between the parties following the execution of the contract. As discussed supra at 17, communications alone typically are insufficient to establish jurisdiction. See also Le Bleu Corp. v. Standard Capital Grp., Inc., 11 F. App'x 377 (4th Cir. 2001) (finding lack of specific personal jurisdiction over California defendant despite the fact that the parties had exchanged some mail and telephone calls, that two visits were made to North Carolina by defendant's employees, that a payment was mailed from North Carolina, and that the contract was signed in North Carolina).

Finally, although physical presence in the forum is not a requirement for jurisdiction, Burger King, at 476, physical entry into the state by the defendant in person or through goods, mail, etc. is certainly a relevant contact. See, e.g., Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 773-774 (1984); English & Smith v. Metzger, 901 F.2d 36, 38-40 (4th Cir. 1990) (attorney in California was subject to Virginia's jurisdiction; although he only communicated with his client from California, he had hired local co-counsel in Virginia); John G. Kolbe, Inc. v. Chromodern Chair Co., 211 Va. 736, 740-41 (1971) (sending an agent to Virginia to secure a contract even though the goods were shipped to North Carolina was a sufficient basis to establish personal jurisdiction). Here, Defendant has not engaged in any physical contacts with Virginia. At no point did DeVito Verdi send an employee or representative to Virginia, and it does not appear that Defendant sent any physical mail or goods following the execution of the contract. Again, the lack of physical contact by DeVito Verdi distinguishes the instant action from cases cited by Plaintiff. See African Dev. Co., 963 F. Supp. at 526 (mine dredges delivered to Virginia); Joe Rainero Tile, 2018 WL 1474085, at *2 (contractor hired a subcontractor based in Virginia); Prod. Grp. Int'l, 337 F. Supp. 2d at 794 (Defendant employee had traveled to Virginia for business); E. Sci. Mktg., Inc. (Minnesota corporation sent a representative to Virginia).

Because nothing about the performance of the contract on the facts and allegations before the Court created a link between Defendant and Virginia, it is also an insufficient basis alone for personal jurisdiction.

### 4. Cumulative Contacts

The remaining concern, therefore, is whether viewing all of Defendant's contacts cumulatively can be a basis for the exercise of specific personal jurisdiction. In an analogous case, the Fourth Circuit found that "[a]lthough [Plaintiff] argues that [Defendant] reached out to it in Virginia, this assertion, even when coupled with the cited [subsequent] communications, is not enough to overcome the factors noted above. On these facts, [Defendant's] contact with Virginia was simply too attenuated to justify the exercise of personal jurisdiction." Consulting Engineers Corp., 561 F.3d at 280. As discussed, in this case, Defendant's contacts with Virginia are also limited to the solicitation of New Venture's business prior to the contract and communications with New Venture following the contract. Thus, this is also too attenuated to overcome the factors that indicate personal jurisdiction does not exist over this matter — New Venture sent the contract to New York for execution, the terms of the contract are governed by a foreign state's laws, the lack of physical contact in Virginia by Defendant, the terms of the contract do not clearly evidence intention of performance in

Virginia, and actual performance of the contract outside of Virginia.

For the reasons stated above, the Court finds that Plaintiff has failed to demonstrate that Defendant availed itself of the privilege of conducting activities in Virginia.

### B. Constitutional Reasonableness

The parties do not contest the second element of the Fourth Circuit's test for specific personal jurisdiction — whether the claim arises out of DeVito Verdi's activities in Virginia — but do contest the third element — constitutional reasonableness of asserting jurisdiction. The "reasonableness" requirement looks at whether the defendant had "clear notice that it is subject to suit [in the forum state], and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State." World-Wide Volkswagen Corp., 444 U.S. at 297. Courts may consider "(1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies." Consulting Engineers Corp., 561 F.3d at 279.

While it is true that Defendant solicited New Venture's business in Virginia, Defendant would bear at least some burden if it were forced to defend the litigation in Virginia. DeVito Verdi is based in New York, and its principals and witnesses would have to travel from New York to Virginia. See, e.g., Wright v. Zacky & Sons Poultry, LLC, 105 F. Supp. 3d 531, 541 (M.D.N.C. 2015) (finding a burden where defendant and witnesses would have to travel interstate).

Virginia has minimal interest in adjudicating the dispute. The parties met in Illinois and reached an oral agreement there; Plaintiff sent Defendant a contract from Virginia to New York, and the contract was executed in New York. Although New Venture argues that Virginia has an interest in defending the rights of its citizen corporations, in this instance, its citizen, New Venture, availed itself of the laws of other states.

It also cannot be said that any unfairness results to Plaintiff. Plaintiff clearly availed itself of foreign states' laws. New Venture is also a sophisticated corporation, and can afford to bring a lawsuit in another state. Further, New Venture is not left with little recourse; it has numerous appropriate fora in which to bring a suit; and jurisdiction is likely proper in Illinois, New York, Pennsylvania, and North Carolina based on the parties' dealings.

Finally, the Court looks at consistency and public policy concerns. Although unaddressed by the parties, other courts, which have looked at the personal jurisdiction question in the context of advertising agencies, have found that an advertising agency is generally only subject to personal jurisdiction in states where they have directed some activity. Cf. Lions Gate Entm't Inc. v. TD Ameritrade Servs. Co., Inc., 170 F. Supp. 3d 1249, 1259 (C.D. Cal. 2016) (finding that a New York-based advertising agency was subject to jurisdiction in California because they knew that the copyright holder was in California, had contact with California and infringed upon the copyright anyway). Here, DeVito Verdi did not direct any activity in Virginia, such as by placing commercials on television or in DeVito Verdi's Virginia stores. Rather, the contract envisions Defendant producing an advertisement once approved by Plaintiff; once produced, the advertisement becomes the property of Plaintiff who then directs placement of the advertisement. Agreement ¶ 1(a). To hold that this is sufficient for personal jurisdiction as New Venture suggests would subject professional service firms like advertising agencies and law firms to suits in a state merely because their clients do business there. The Court is not aware of any case that has permitted such an expansive view of personal jurisdiction.

For the reasons discussed above, the Court finds that it would not be constitutionally reasonable to exercise jurisdiction on the facts and allegations before it.

### C. Leave to Amend

Plaintiff requests that New Venture be granted leave to amend if any of the claims are found insufficient. A court is required to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "This liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (en banc) (citations omitted). However, "a district court may deny leave to amend if the amendment 'would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile.'" U.S. ex rel. Nathan v. Takeda Pharm. N. Am., Inc., 707 F.3d 451, 461 (4th Cir. 2013) (quoting Laber, 438 F.3d at 426); see, e.g., Hosch v. United Bank, Inc., No. 4:09-CV-1490-TLW-TER, 2010 WL 3420977, at *6 (D.S.C. Aug. 3, 2010), report and recommendation adopted, 2010 WL 3420960 (D.S.C. Aug. 27, 2010) (granting a Rule 12(b)(2) motion to dismiss with leave to amend against defendants for whom amendment would not be futile).

In this case, Defendant does not appear to oppose granting Plaintiff leave to amend the Complaint, and nothing suggests that an amendment would be prejudicial to Defendant, or that Plaintiff

has acted in bad faith. Moreover, it is not clear that any amendment would be futile. Accordingly, the Court will **grant** Plaintiff leave to amend the Complaint to cure its defects.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss is **GRANTED**, ECF No. 10. The Court **PROVIDES** Plaintiff with leave to amend the Complaint to cure all defects within fifteen (15) days after the entry of this Order.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/ 

Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
March 21 , 2019